IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JERL D. HARRIS,<br>    Plaintiff, | CV. 06-439-MO |
| v. | OPINION AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | |

**MOSMAN, J.,**

  Plaintiff Jerl Harris brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

BACKGROUND

Mr. Harris was 50 years old on the date of the hearing. He completed ninth grade and subsequently received his GED. He worked in the past as a custodian, janitor, newspaper carrier, and desk clerk. Tr.[1] 61.

Mr. Harris alleges disability due to depression, addiction, schizophrenia, compulsive disorder, and anxiety social disorder. Tr. 327. Mr. Harris alleges that his various conditions cause him to hear voices, experience dizziness and nervousness, and become anxious in public places. Tr. 327, 833-34.

Mr. Harris has a thirty-year plus history of drug abuse and addiction. At the time of the hearing in July 2005, he was participating in a methadone program and had been clean since October 2004. He was terminated from his last employment in 1990 or 1993 for using drugs. Tr. 837.

Mr. Harris filed an application for SSI in April 1996 that was denied. He filed another application for SSI in July 1999 which was also denied, but this time he requested rehearing and a hearing was held before an administrative law judge ("ALJ") in October 2000. Mr. Harris received a fully favorable decision in April 2001, which found that he was disabled and had been since July 1999. The ALJ found that drug addiction was not a material factor to his disability. Subsequently, Mr. Harris was incarcerated for possession of drugs and his benefits were terminated in October 2001.

After his release from prison, Mr. Harris filed his current application for SSI on January

---

[1]"Tr" refers to the "Transcript of Administrative Record" filed by the Commissioner in this case.

17, 2003.  Tr. 319.  The exact date on which Mr. Harris alleges his disability began is somewhat unclear from the record; however, he does not object to the ALJ's conclusion that his disability began on January 1, 2003.  Tr. 15.  That application was denied, and a hearing was held on July 13, 2005 before a different ALJ.  In a decision dated August 10, 2005, the ALJ found Mr. Harris not disabled and therefore not entitled to benefits based on a finding that Mr. Harris's substance abuse was a material factor to the finding of disability.  On January 27, 2006, the Appeals Council denied Mr. Harris's request for review, making the ALJ's decision the final decision of the Commissioner.  Mr. Harris timely filed his complaint with this court on March 20, 2006.

## STANDARDS

A claimant is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The

Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## MEDICAL RECORDS

The medical records accurately set forth Mr. Harris's medical history as it relates to his claim. The court has reviewed the records, and the parties are familiar with them. Accordingly, only a brief summary appears below.

Mr. Harris has a history of mental illness. He has been diagnosed at various times with a major depressive disorder with psychotic features, polysubstance dependence, personality disorder with antisocial, schizoid and avoidant features, schizoaffective disorder, and depression. He experienced auditory hallucinations over a number of years, anxiety and paranoia.

Mr. Harris also has a long history of substance abuse and has admitted to using drug beginning at age fifteen and continuing throughout his life with only brief periods of abstention, often as a result of incarceration.[2] His drugs of choice were heroin and cocaine. He has had several heroin overdoses. He participated in many drug treatment programs, and he was receiving Methadone and attending numerous, regular group therapy sessions for recovering substance users as of the date of the hearing. At the date of the hearing, Mr. Harris had been clean and sober since October 2004.

Mr. Harris has been placed on a number of prescription drugs including Methadone, Clonidine, Risperdal, Phenergan, Klonopin, Paxil, Seraquil, Trazadone, and Vistaril. Tr. 97, 332. Mr. Harris reported that medication gave him inconsistent relief from his ongoing mental conditions though he was often non-compliant with medication.

---

[2] Mr. Harris has been in jail multiple times for drug possession and theft crimes.

DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920. Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

<u>Step One</u>. The ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two. 20 C.F.R. § 416.920(b).

<u>Step Two</u>. The ALJ determines whether the claimant has one or more severe impairments significantly limiting him from performing basic work activities. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>. The ALJ next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four. 20 C.F.R. § 416.920(d).

<u>Step Four</u>. The ALJ determines whether the claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. § 416.920(e).

<u>Step Five</u>. The ALJ determines whether the claimant is able to do any other work. If not,

the claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show there are a significant number of jobs in the national economy that the claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the ALJ does not meet this burden, the claimant is disabled.  20 C.F.R. § 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## THE ALJ'S FINDINGS

At step one, the ALJ found that Mr. Harris had not engaged in substantial gainful activity at any time relevant to this decision.  Tr. 16.  This finding is not in dispute.  At step two, the ALJ found that Mr. Harris had the severe impairments of an affective disorder, an anxiety-related disorder, a personality disorder, and a history of substance addiction disorder in remission as of October 2004.  Tr. 18.  This finding is in dispute.  At step three, the ALJ found that Mr. Harris's impairments do not meet or equal a listing.  Tr. 19.  This finding is in dispute.

In determining Mr. Harris's RFC, the ALJ found that prior to October 2004 and with the effects of drug addiction and alcoholism ("DAA"), Mr. Harris had the functional capacity to engage in one to two-step routine and simple work tasks with no public interaction and limited interaction with co-workers.  Tr. 20.  Further, the ALJ found that Mr. Harris had deficiencies in persistence and pace that would cause him to miss part days, full days, and/or would not be

functional while at work that would equate to him missing two or more workdays per month. Id. Based on this RFC, the ALJ found at step four that Mr. Harris was unable to return to any of his past relevant work. Id. Utilizing the testimony of a VE, the ALJ found at step five that Mr. Harris was unable to make an adjustment to other work existing in the national economy, and therefore was under a disability from January 1, 2003, through October 2004. Tr. 22.

After finding that DAA was material to the finding of disability, the ALJ reformulated Mr. Harris's RFC and found that since he gained sobriety in October 2004, Mr. Harris would no longer be deficient in persistence and pace that would cause him to miss part days, full days, and/or would cause him not to be functional while at work such that he would miss two or more workdays per month. Tr. 21. Based on this reformulated RFC and VE testimony, at step four the ALJ found that Mr. Harris could return to his past work as a custodian. Id. In the alternative, the ALJ also found that Mr. Harris could make the adjustment to other jobs as a custodian and as a room cleaner. Id. Thus, the ALJ found Mr. Harris not disabled based on substance abuse as a material factor contributing to his disability.

## DISCUSSION

Mr. Harris contends that the ALJ erred by: 1) finding DAA material to his disability; 2) failing to find he had additional severe impairments at step two that met or equaled a listing at step three; and 3) making erroneous conclusions at steps four and five.

I.   DAA Materiality Finding

Mr. Harris argues that because the ALJ ignored and rejected some medical opinions, the ALJ's formulation of his RFC and ultimate conclusion that DAA was material were erroneous. I disagree.

If a claimant is found disabled and there is medical evidence of a substance abuse disorder, the ALJ must determine the materiality of the claimant's DAA to his disability. Thus, the ALJ must perform the sequential evaluation a second time to determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). Drug addiction or alcoholism is a material factor when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). The ALJ reviews the medical evidence and, if necessary, consults with a medical expert in determining what limitations, if any, would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.927(f)(2)(iii). A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J); Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001). If the ALJ determines that the claimant's remaining limitations after cessation of drug and alcohol use are disabling, then the ALJ finds the claimant is disabled, independent of his drug addiction or alcoholism. 20 C.F.R. § 416.935(b)(2)(ii). Under Ninth Circuit law, the claimant bears the burden of showing that DAA is not a contributing factor material to the disability determination. Parra v. Astrue, 481 F.3d 742, 744-45 (9th Cir. 2007); Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).

Here, the ALJ correctly performed the sequential evaluation process a second time and, relying on substantial evidence, found that DAA was material to the finding of disability. Relying on records from the relevant time period beginning January 1, 2003, through the date of the hearing, the ALJ considered records from the Oregon Department of Corrections, Cascadia Behavioral Healthcare, Dr. Jane Starbird, Ph.D., Providence Medical Center, and NTN/Allied

Health Services. Tr. 16-21. The ALJ relied on medical evidence to find that Mr. Harris's functioning improved when he abstained from using drugs and was compliant with his medication. This evidence included treatment notes from the period after October 2004 when Mr. Harris became clean and sober, and also periods of sobriety before October 2004. Tr. 19-21. The ALJ also evaluated Mr. Harris's credibility with regard to reporting his drug usage and reporting his symptoms and found him not credible.[3] Tr. 17, 18, 20. The ALJ's finding as to the effect of substance abuse was proper. Because Mr. Harris has not met his burden of showing that his ongoing substance abuse was not a contributing factor material to the determination of disability, the ALJ's finding must be upheld.

Specifically, Mr. Harris argues that the ALJ's rejection of three medical opinions was error and that if those opinions were credited, his RFC would have been formulated differently. With regard to the psychological evaluation performed by Frank Colistro, Ed.D., the court notes that Dr. Colistro's evaluation was performed in August 1999, over three years before the relevant time period for consideration of Mr. Harris's current application. Tr. 135. Mr. Harris relies on Dr. Colistro's findings that his various conditions were not the result of substance abuse and dependence and the favorable ALJ decision related to his 1999 application for benefits. However, Dr. Colistro was not a treating physician and he did not even review Mr. Harris's medical history before forming his conclusions, but only interviewed Mr. Harris and performed some tests. Tr. 135. As such, his conclusions were partly based on Mr. Harris's self-reporting which was unreliable. Also, Mr. Harris incorrectly assumes that a prior favorable decision informs this court's consideration of his latest application. However, the SSI benefits Mr. Harris

---

[3]The court notes that Mr. Harris does not challenge the ALJ's credibility finding.

Page 9 - OPINION AND ORDER

received as a result of the April 2001 decision were suspended in October 2001 when he was incarcerated for one month and then terminated when the incarceration lasted for more than twelve months. No presumption of continuing disability applies to the application currently before this court, and Mr. Harris has the burden of proving, once again, that he is eligible for benefits.[4] While the ALJ was required to consider medical evidence during the period of disability in question, the ALJ is not required to discuss non-probative evidence. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this case, the ALJ did not reject Dr. Colistro's opinion, but found it to be non-probative of disability since the alleged onset date. Thus, he did not err by failing to provide specific reasons for rejecting it.

    Mr. Harris next argues the ALJ erred in according little weight to the opinion of Susan Hippe, a psychiatric and mental health nurse practitioner with Cascadia Behavioral Healthcare, who treated Mr. Harris in 2004, and wrote a letter regarding his status in July 2005. Tr. 822. Ms. Hippe opined that Mr. Harris would decompensate outside of his structured environment, and that his symptoms would prevent him from sustaining a full-time job. Tr. 822. The ALJ rejected Ms. Hippe's opinion, noting first that she is not an acceptable medical source under SSA regulations, and that her comments would be evaluated as third-party witness testimony. Tr. 17. Nurse practitioners are not acceptable medical sources, and an ALJ need only provide germane reasons for rejecting such lay opinions. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Overall, the ALJ provided germane reasons for assigning little weight to Ms. Hippe's opinion.

---

[4] See SSA regulations as stated in the Program Operations Systems Manual ("POMS") SI 02310.093A, "Procedure – Reinstating Benefits to Prisoners," available at http://www.ssa.gov/regulations/.

Page 10 - OPINION AND ORDER

With regard to her July 2005 statement, the ALJ noted that Ms. Hippe's statement was obtained by the claimant's attorney for the purpose of the SSA proceeding. Tr. 17. Under Social Security regulations, the reliability of an opinion from a nurse practitioner may be measured by the longevity and frequency of the contact between the nurse practitioner and the claimant, how consistent the nurse practitioner's opinion is with other evidence, and the degree to which the nurse practitioner presents relevant evidence to support her opinion. See 20 C.F.R. § 416.927(d). Opinions of a medical advisor who is acting as an advocate are entitled to less weight. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, the ALJ explains his credibility determination by noting that "treatment records from Cascadia do not support [Hippe's] conclusion, in that the records do not just note improvement but have noted significant improvement in the claimant's mental functioning once he became compliant with treatment and became clean and sober." Tr. 17. Treatment notes from Cascadia support the ALJ's conclusion that Mr. Harris showed improvement after October 2004. See Tr. 555 (Harris still hearing voices but much improved; affect is full and mood is good; denies symptoms of depression); Tr. 553 (voices heard at a lower level and Harris states he can ignore them most of the time; alert and oriented; no paranoid content expressed; he would like to have a part-time job); Tr. 552 (Harris is taking care of his mother feels they are developing a good relationship). The ALJ also noted that "Ms. Hippe fail[ed] to address the affects of the claimant's drug abuse on this mental functioning and her report simply attempts to minimize the abuse." Tr. 18. Thus the ALJ relied on Ms. Hippe's apparent advocacy for Mr. Harris and the fact that objective medical evidence did not support her opinion when considering the credibility of her statement obtained for the purpose of Mr. Harris's application for benefits. The ALJ did not err in considering these factors.

Page 11 - OPINION AND ORDER

The ALJ also relied on statements from Ms. Hippe's opinions that are contradicted by other record evidence to find that Ms. Hippe placed undue reliance on Mr. Harris's subjective complaints and self reports which were not entirely credible. Tr. 17-18. Opinions premised solely on a claimant's subjective complaints and testing within the claimant's control is properly given the same weight as a claimant's own credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Thus the ALJ appropriately considered inaccuracies in Ms. Hippe's reports which were based on Mr. Harris's incredible self reports. See, e.g., Tr. 569, 822 (Hippe wrongly concludes based on self reports that Harris's eighteen-month period of sobriety excluded the eighteen months he was incarcerated up to January 2003); Tr. 570 (Hippe recites Harris's self report in April 2004 that he had not been in prison for ten years when, in fact, he was in prison until January 2003). Also, the ALJ discredited Ms. Hippe's opinion based on her minimization of Mr. Harris's substance abuse. Tr. 18. Ms. Hippe stated that Mr. Harris's "relapses often happened when Mr. Harris was not getting his mental health medication." Tr. 822. But the record shows and the ALJ pointed out that Mr. Harris was on medication and still abused drugs when he was under Ms. Hippe's care. Tr. 18. Thus, Ms. Hippe's reliance on Mr. Harris's reports that medication was not helping his mental health is called into question by Mr. Harris's ongoing drug use while being treated by Ms. Hippe until he became clean and sober in October 2004. Overall, substantial evidence supports the ALJ's determination that Ms. Hippe's opinion was due little weight.

Finally, Mr. Harris assigns error to the ALJ's rejection of the short letter provided by internist Sunny Kim, MD, in July 2005, submitted without supporting medical reports or chart notes. Tr. 824. Dr. Kim states that she had been Mr. Harris's primary care physician for "about

Page 12 - OPINION AND ORDER

ten months" and opined that he was unemployable due to his schizoaffective disorder. Tr. 18, 824.

The ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. See Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). In evaluating the medical evidence, the ALJ is not required to find a physician's opinion conclusive as to a physical condition or as to the ultimate issue of disability. See Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999). In particular, the ALJ is not bound to a physician's opinion of a claimant's disability or employability, because these issues are reserved to the Commissioner. 20 C.F.R. § 416.927(e). As the court explained in Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), a physician's opinion of disability is not a legal opinion establishing disability under the Social Security Act because the Commissioner's finding involves a medical and vocational component.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester v. Chater, 81 F.3d 821, 830, (9th Cir. 1995) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's opinion is contradicted by that of another physician, specific and legitimate reasons supported by substantial evidence in the record are required to reject the treating physician's opinion. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). "[I]f a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight." Holohan, 246 F.3d at 1202; 20 C.F.R. § 416.927(d)(2); Social Security Ruling 96-2p, 1996 WL 374188. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a

treating or examining physician, the court credits that opinion as a matter of law. Lester, 81 F.3d at 834.

Here, the ALJ discredited Dr. Kim's opinion by finding that her opinion as to Mr. Harris's disability fails to state with specificity how his mental health issues interacted with his ongoing substance abuse. Tr. 18. As the Commissioner correctly notes, Dr. Kim did not provide medical records to support her opinion, nor did she provide any diagnostic testing results to support her medical opinion. Also, Dr. Kim's opinion is not consistent with other medical opinions of record. Thus her opinion is not entitled to controlling weight. Dr. Kim writes that she "suspects" Mr. Harris's mental condition has lasted for more than three years, and that she "recalls" him telling her that he used to hear voices in his 30s. Tr. 824. As the ALJ notes, this cursory analysis of Mr. Harris's medical records fails to mention a significant history of drug abuse, and fails to note any impact on Mr. Harris's mental functioning as a result of his drug abuse, as many other medical providers have noted. She also writes that he recently "cleaned up his act" and that she is "hopeful that he will be able to qualify for disability." Tr. 824-25. Opinions of a medical provider who is acting as an advocate are entitled to less weight. Matney, 981 F.3d at 1020. Overall, Dr. Kim's opinion fails to provide sufficient detail as to Mr. Harris's mental health, and the ALJ correctly accorded her opinion little weight.

The ALJ provided specific and legitimate reasons supported by substantial evidence for discrediting the opinions of Dr. Kim, Dr. Colistro and Ms. Hippe. Under Ninth Circuit law, this court must uphold the Commissioner's decision if the evidence presented is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1193 (9th Cir. 2004).

Page 14 - OPINION AND ORDER

II.  Mental Retardation and Affective Disorder Impairments at Step Three

Mr. Harris argues the ALJ erred in failing to find that his mental impairments meet or equal Listings 12.05B or 12.05C, the listings for mental retardation, or Listing 12.04, the listing for Affective Disorders.  The ALJ included "rule out mild mental retardation" and "an affective disorder" in his step two finding of severe impairments.  At step two, the ALJ also found Mr. Harris's impairments "cause vocationally relevant limitations," and at step three the ALJ found that "such limitations do not manifest themselves to the degree that meets or equals any section of Appendix I," even with the effects of DAA which exacerbated the limitations caused by his other impairments.  Tr. 18-19.

An impairment is severe for purposes of step two of the evaluation process if it significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c).  "Basic work activities" are the abilities and aptitudes necessary to do most jobs.  20 C.F.R. § 416.921(b).  These include physical functions such as seeing, hearing, speaking, walking, standing and sitting, and mental functions such as understanding, remembering, using judgment and responding appropriately to work situations.  Id.  The burden of proving a medically determinable severe impairment is on the claimant.  Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.912.  To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.

A.  Mental Retardation

Under Social Security regulations, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

Page 15 - OPINION AND ORDER

the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Under § 12.05B, a claimant meets a listing if he had a "valid verbal, performance, or full scale IQ of 59 or less." Under § 12.05C, a claimant meets a listing if he had a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

      Here, Mr. Harris admits he can not meet § 12.05's requirement that the mental limitation manifest itself before age 22. Testing done in August 1999 found he had a verbal IQ of 77, a performance IQ of 59, and a full-scale IQ of 66. Tr. 137. The record does not include any IQ tests dated before Mr. Harris was 22, and his only support is some reference to participation in special education as a child. Tr. 479. However, the record also shows that Mr. Harris later obtained his GED. Tr. 198. As to the specific listings, Mr. Harris also fails to meet the requirement of § 12.05B that IQ scores must be accompanied by a narrative report on the consistency of those IQ scores with developmental history and degree of functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Mr. Harris's IQ scores in the record do not include this required narrative report. Also, Mr. Harris fails to provide a physician's opinion that included a definite diagnosis of mental retardation. Finally, under the ALJ's reformulated RFC taking DAA into account, the additional limitations of function required to meet listing 12.05C were not present. Overall, Mr. Harris has failed to show that his IQ scores alone or in combination with deficits in concentration, persistence, and pace meet or equal Listing 12.05. The ALJ correctly concluded that Mr. Harris did not have an impairment of mental retardation that met or equaled a listing at step three.

Page 16 - OPINION AND ORDER

B.    Affective Disorders

Under Social Security regulations, affective disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The requirements for meeting the listing are detailed and specific. See id. at § 12.04A-C. Mr. Harris presents two sentences for his argument as to this listing: "The record also implicates Listing 12.04, affective disorders. For the same reasons as discussed under Listing 12.05, Mr. Harris's impairments meet or equal this Listing even absent any DAA." Pl.'s Op. Br. at 14. Without providing a substantive argument, Mr. Harris fails to meet his burden of showing in what way the ALJ's finding that his affective disorder did not meet or equal a listing at step three was error. The court notes that the ALJ is not required to state why a claimant failed to satisfy every different section of the listing of impairments. Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ's evaluation of the evidence was an adequate statement of the "foundations on which the ultimate factual conclusions are based"). Mr. Harris failed to provide a physician's opinion stating that he has an affective disorder that meets or equals the listing. Mr. Harris also failed to show that he is impaired with an affective disorder without the effects of DAA. Because the ALJ set forth the medical evidence in sufficient detail and Mr. Harris failed to explain how the ALJ erred in evaluating that medical evidence with regard to an affective disorder, the ALJ's finding that Mr. Harris impairments are not equivalent to a listed impairment for an affective disorder is upheld. See Lester v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

III.     Step Four and Five Conclusions

Mr. Harris contends the ALJ made two errors in his step four and step five conclusions. Based on the reformulated RFC that took DAA into account and included VE testimony, at step four the ALJ found that Mr. Harris could return to his past work as a custodian. Tr. 21.  In the alternative, the ALJ also found that Mr. Harris could make the adjustment to other jobs as a custodian and as a room cleaner. Id.  Mr. Harris's first argument reiterates his contention that the opinions of Dr. Colistro, Dr. Kim and Ms. Hippe should be credited as true.  This argument was addressed and dismissed above and will not be revisited here.  For his second argument, Mr. Harris contends the jobs identified by the VE and cited by the ALJ are not simple jobs entailing one to two-step routine and simple work tasks, restrictions identified by the ALJ in formulating Mr. Harris's RFC.  Tr. 20.  However, Mr. Harris misstates the job titles identified by the VE (custodian and room cleaner), and instead mistakenly concludes that the VE has recommended and the ALJ has concluded that Mr. Harris is capable of performing work as a janitor, a job with a specific vocational preparation ("SVP") of 3.  See Dictionary of Occupational Titles, No. 382.664-010.  In fact, the ALJ concluded that Mr. Harris was capable of performing the job of custodian (No. 381.687-014) and the job of cleaner (No. 323-687-010), both of which have an SVP of only 2, signifying that these jobs are simple.  Thus the ALJ did not err in accepting the VE's testimony as to jobs Mr. Harris could perform and making findings based on that testimony at steps four and five that were supported by substantial evidence.

CONCLUSION

For the foregoing reasons, the Commissioner's determination that Mr. Harris does not suffer from a disability and is not entitled to SSI under the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

Dated this  20th  day of June, 2007.


/s/ Michael W. Mosman
Honorable Michael W. Mosman
United States District Judge